SIMPSON *et al.*, Appellants, v. KANSAS CITY.

Division Two, July 1, 1892.

1. **Municipal Corporation:** EMINENT DOMAIN: STREET IMPROVE-MENT: DISCONTINUANCE OF PROCEEDING. A municipal corporation, in the absence of statutory regulations to the contrary, can discontinue proceedings for condemnation of property for public use, and may abandon such public improvement at any time before a final award in the nature of a judgment in favor of the property-owners for their compensation is made.

Simpson v. Kansas City.

2. ——: ——: ——: ——: KANSAS CITY CHARTER. The right to discontinue such proceeding is recognized by the charter of Kansas City, article 7, section 5.

3. ——: ——: ——: ——: EVIDENCE. The fact of discontinuance is not evidence to prove a wrongful commencement of the proceedings.

4. ——: EMINENT DOMAIN: POLITICAL QUESTION. The necessity, expediency and propriety of exercising the right of eminent domain, either by the state or by corporate bodies to whom such right is delegated are questions essentially political, and not judicial.

5. ——: ——: ——. The city authorities and not the courts are the judges of the necessity of an improvement for street purposes.

6. ——: ——: DAMAGES. Where there is an entry by the city on the land sought to be taken, and the proceedings are afterwards abandoned, a suit will lie for any damages caused by the entry and possession, which will be taken as tortious from the beginning.

7. ——: ——: ——. So, proof of a long, unexplained and wrongful delay in, and the final dismissal of, the condemnation proceedings, with the resulting injuries, will make out a *prima facie* case in favor of the property-owner.

## Appeal from Jackson Circuit Court.

REVERSED AND REMANDED.

*Ed. G. Taylor* for appellants.

(1) Proceedings by a corporation to condemn property for public use may be dismissed by the corporation at any time prior to a final judgment; but when they are so dismissed the corporation is liable to the property-owner for the actual loss inflicted by the institution and maintenance of the proceedings. *Liesse v. Railroad,* 2 Mo. App. 105; s. c., 72 Mo. 561; *Railroad v. Lackland,* 25 Mo. 515; *St. Joseph v. Hamilton,* 43 Mo. 282; *Rogers v. St. Charles,* 3 Mo. App. 41; *McLaughlin v. Municipality,* 5 La. Ann. 504; *Rofficnac Street,* 4 Rob. (La.) 357; *O'Neill v. Hudson,* 41 N. J. L. 161; *Graff v. Mayor,* 10 Md. 544; *Norris v. Mayor,* 44 Md. 598; *Black v. Baltimore,* 50 Md. 235; s. c. (city

held liable), 56 Md. 333; *Gear v. Railroad*, 20 Iowa, 523; *Edmonds v. Boston*, 108 Mass. 535; Mills on Eminent Domain [2 Ed.] sec. 313; *Drury v. Boston*, 101 Mass. 439; *New Bedford v. Bristol*, 9 Gray, 346; *Stevens v. Duck River Co.*, 1 Sneed, 237; *Plum v. City*, 101 Mo. 525; *Gibbons v. Railroad*, 40 Mo. App. 146. (2) The right of eminent domain rests upon necessity, and can only be exercised when the necessity exists. 2 Dillon on Municipal Corporations [4 Ed.] sec. 589; Cooley on Constitutional Limitations [6 Ed.] ch. 15; *Leslie v. St. Louis*, 47 Mo. 475; *St. Louis Co. v. Griswold*, 58 Mo. 175; *Newby v. Platte Co.*, 25 Mo. 258; *Anderson v. St. Louis*, 47 Mo. 479; Charter of Kansas City, art. 7, sec. 1; Session Acts, 1875, p. 244. (3) The long delay and final abandonment of proceedings once begun is *prima facie* that the necessity did not exist. *McLaughlin v. Municipality*, 5 La. Ann. 504; *Bank v. Railroad*, 49 Vt. 167; *Bloodgood v. Railroad*, 14 Wend. 51; *Liesse v. Railroad*, 2 Mo. App. 105; s. c., 72 Mo. 561.

*F. F. Rozzelle* and *James Black* for respondent.

(1) Proceedings by a municipal corporation to condemn private property for public use may be discontinued or abandoned at any reasonable time after the final ascertainment in the courts of the assessment for damages without subjecting the municipality to an action on account of delay. Lewis on Eminent Domain, sec. 658; *Stevens v. Danbury*, 53 Conn. 22, 25; *Bergman v. Railroad*, 21 Minn. 533; *Feiten v. Milwaukee*, 47 Wis. 494, 497. (2) Though the right of eminent domain rests upon necessity, yet the question as to when the necessity exists is a matter of discretion resting with the person or corporation exercising the power. Mills on Eminent Domain, sec. 11; Lewis on

Eminent Domain, secs. 238, 239. (3) Long delay and final abandonment of proceedings to condemn are not evidence that the necessity did not exist, but merely that the municipality, acting for the public, did not see fit to take the property at the assessed price or under the circumstances. *In the matter of Commissioner*, 31 N. J. L. 15.

MACFARLANE, J.—The petition in this case charged that the defendant, a municipal corporation, in 1879 commenced proceedings for widening Twelfth street in Kansas City, and for that purpose to condemn the property of plaintiffs, to-wit, lots 1, 2, 3, 4, 9 and 10 in block 57 of Turner & Co.'s addition to said city; that the proper ordinances were duly passed, and in 1881 damages were assessed by a jury duly impaneled by the mayor; from the judgment entered for the damages so assessed certain parties to said proceedings appealed to the circuit court of Jackson county, but that plaintiffs took no appeal; that said proceedings were continued, pending in the courts until 1888, when an ordinance was duly passed and approved repealing the said ordinances for the widening said Twelfth street, and the said city thereupon dismissed said condemnation proceedings, and the proposed widening of said street was abandoned; that the property of plaintiffs so taken and condemned by defendant was, when the proceedings were commenced, and still is, valuable for business purposes; situated in a business portion of said city and of great annual value, and that by reason of said proceedings to condemn said property they have been unable to rent the same, or to sell it for anything like its real value, or to improve or use the same; that on account of said proceedings they were compelled to employ counsel to look after and protect their interest

in said proceedings and to pay large sums of money therefor.

The petition then made the following averments: "The plaintiffs say further that at the time of the passage of said ordinance to condemn plaintiffs' said property, in November, 1879, it was not necessary to take said property for public use as a part of said Twelfth street, and it was not necessary to so take said property at any time while said proceedings were pending; and said proceedings to condemn the plaintiffs' said property as aforesaid were needlessly and wrongfully begun by the defendant, and they were needlessly, wrongfully and vexatiously continued by the defendant, against the protest of these plaintiffs, and said proceedings were unnecessarily delayed and kept pending over said property of the plaintiffs during said long period of time, during all of which time said proceedings were entirely under the control of the defendant, and could have been dismissed by it at any time; all to the great damage of the plaintiffs as above set forth. Wherefore plaintiffs say that by reason of the matters and things herein stated they have been damaged in the sum of fifteen thousand dollars ($15,000); for which sum, with costs of this suit, they ask judgment against the defendant."

To this petition a general demurrer was sustained, judgment entered for the defendant, and plaintiffs appealed.

Three questions are raised by the ruling of the court upon this demurrer: *First*, did the city have the right to discontinue its proceedings to widen Twelfth street; *second*, is the city liable in damages for needlessly commencing the proceedings to widen said street; *third*, upon the discontinuance of the proceedings to condemn plaintiffs' property, was defendant liable to them for damages on account of such proceedings?

I.　It has long been the rule in this state, and is the general rule elsewhere, that, in the absence of statutory regulations to the contrary, a municipal corporation has the right to discontinue proceedings for condemning property for public uses, and to abandon such public improvements at any time before a final award, in the nature of a judgment, in favor of the property-owners for their compensation, is made. *Railroad v. Lackland*, 25 Mo. 515; *St. Joseph v. Hamilton*, 43 Mo. 288; *State ex rel. v. Hug*, 44 Mo. 117; 2 Dillon on Municipal Corporations, sec. 609; Lewis on Eminent Domain, sec. 656; 3 Sedgwick on Damages, sec. 1166; Mills on Eminent Domain, sec. 311; *City of St. Louis v. Meintz*, 107 Mo. 611.

No provision of the charter of Kansas City has been pointed out which is inconsistent with this rule. Indeed, the right of the city to discontinue such proceedings is fully recognized under section 5, article 7, of the charter. This section provides that if the assessment of damages be not confirmed within sixty days from making the report "the proceedings and verdict shall be void." Thus it is seen the right to discontinue is not only implied, but a failure to act upon the report for more than sixty days itself operates as a discontinuance.

II.　The second question must also be resolved against the theory of plaintiffs, that a municipal corporation is liable to a land-owner for damages inflicted by needlessly commencing and prosecuting proceedings to widen or extend a street through his property, and which are afterwards abandoned.

The necessity, expediency and propriety of exercising the right of eminent domain, either by the state or by the corporate bodies to which the right has been delegated, are questions essentially political in their nature and not judicial. The grant by the legislature

to this city of the right to take private property for use as public highways carried with it also the power to determine the necessity for its exercise, and when action has been taken by the proper corporate body or tribunal in any case, in which the contemplated use is a public one, it is conclusive upon the courts. *Dickey v. Tennison*, 27 Mo. 373; *County Court v. Griswold*, 58 Mo. 189; *State ex rel. v. Englemann*, 106 Mo. 628; Lewis on Eminent Domain, sec. 162; 2 Dillon on Municipal Corporations, sec. 600.

The contention of plaintiffs is that the final discontinuance of the proceedings was *prima facie* evidence that they were unnecessary in the beginning, and, consequently, the whole proceeding was wrongful. This view gets some support from the cases of *Leisse v. Railroad*, 2 Mo. App. 105; s. c., 72 Mo. 561, and *Rogers v. St. Charles*, 3 Mo. App. 41. The intimation of the court of appeals in these cases, though not decided, is that the correspondence between the cost of the improvements and its public utility should not be considered in determining whether the improvement should be made. In the latter case Judge GANTT says: "To allow the state or any deputy of the state to pronounce a particular piece of property necessary or unnecessary, according to the terms on which it may be possible to acquire it, * * * would be thought an extravagant idea of arbitrary power if it were imagined in a satire."

We do not think this the correct view to take of the question of public improvements. The authorities directing such improvements should have, and in the absence of statutory provisions are generally held to have, discretion to accept or reject the property at the price fixed. "This rule is a necessity in view of the rational conduct of affairs." "A man of prudence relinquishes a project when he finds the cost is likely to

exceed, in a large measure, the benefits; it would seem intolerably unreasonable to require the agent of the public to pursue the opposite course." *O'Neil v. Free-holders*, 41 N. J. L. 161; Lewis on Eminent Domain, sec. 656; *St. Joseph v. Hamilton, supra*.

Most laws concerning public roads contain provisions authorizing county courts to refuse to establish new roads at the public expense, unless satisfied that the proposed load is of sufficient public utility to justify the payment of the damages assessed. Most city charters contain like provisions. The charter of Kansas City, as has been seen, allows sixty days after the cost has been ascertained in which to determine whether the improvement shall be carried forward or abandoned. The fact that these proceedings were discontinued is not, in my opinion, a circumstance to prove a wrongful commencement.

III. It appearing then that the city has the power of determining for itself, in the first place, the necessity, expediency and propriety of exercising eminent domain in opening or improving its highways, and of discontinuing proceedings instituted for that purpose if the benefits to the public are found not to be commensurate with the expense of condemnation, we reach the third and most important inquiry, whether the land-owner is entitled to recover damages on account of being unable "to lease, sell or improve" the property pending the proceedings, and on account of "trouble and expense" in attending to the litigation.

The authorities are not harmonious on this question. It was said in *Railroad v. Lackland, supra*, in considering the right of the corporation to dismiss condemnation proceedings: "It is obvious that, if the company is permitted to discontinue, all the costs and expenses of the land-owner should be paid by the company. This will embrace all the costs of the case

and counsel fees, both here and in the court where the case was tried." In the *City of St. Joseph v. Hamilton*, it is said (WAGNER, J.): "I have no doubt that the city may dismiss its proceedings at any time before final judgment in the circuit court, and then the only liability that would be incurred would be the expenses." The court of appeals in case of *Leisse v. Railroad*, *supra*, which was for damages on account of condemnation proceedings which had been discontinued, went further, and held the corporation liable for loss of rent occasioned by the pending of the proceedings. GANTT, J., says: "We, therefore, think that the actual losses inflicted on the land-owner, by the institution and maintenance of the proceedings to condemn his land, are recoverable when those proceedings are discontinued; and that in the estimate of these losses will be included any loss of rent occasioned by the pending of the proceedings, and the threat of subjecting the property to the use of the road." This decision was approved by this court, 72 Mo. 561, SHERWOOD, J., dissenting. These opinions have been followed by a number of decisions of the court of appeals.

Dillon in his work on municipal corporations says: "Where proceedings are rightfully discontinued, the land-owner cannot have a *mandamus* to collect, nor can he recover by action, the sum that may have been estimated by commissioners; yet he may have a special action for damages for any *wrongful* and *injurious* acts of the corporation in the course of the proceedings." 2 Dillon on Municipal Corporations, sec. 609 (474).

Both Lewis and Mills on Eminent Domain cite approvingly the decisions which hold that, in case of wrongful and unnecessary delay, damages should be allowed for trouble and expense, as well as for rents and profits and other special damages suffered. Mills on Eminent Domain, sec. 313; Lewis on Eminent

Domain, sec. 658. See cases cited by each of those. These include decisions of the states of Iowa, Maryland, Louisiana, New York and Massachusetts. The last named were governed by statute.

The courts of Minnesota, Wisconsin and Connecticut hold that the acts of the city in causing the delay must be both wrongful and injurious, or there is no liability. *Bergman v. Railroad*, 21 Minn. 533; *Stevens v. Danbury*, 53 Conn. 20; *Feiten v. Milwaukee*, 47 Wis. 496. All agree that, if there be an entry on the land, and the proceedings are afterwards abandoned, a suit will lie for any damages occasioned by the entry and possession which will be taken as tortious from the beginning. Lewis on Eminent Domain, sec. 658.

In the Missouri cases cited, it does not appear what the provisions of the charters of the respective corporations contained, limiting the time within which they should accept or reject the property after the damages had been assessed. So long as a city is acting under authority of law, and in conformity thereto, it is difficult to find any satisfactory ground upon which to base an action for damages. It is true that so long as the proceedings are pending the owner is deprived of the full use and enjoyment of his property. This is no less the case in every action in which the title to property is involved. It is an injury for which no remedy has been provided.

Every owner of real estate, especially in a town or city, holds his right and title thereto subject to the right of the public to appropriate it, in case of necessity, to public uses, the appropriation to be enforced, if legal force is necessary, according to the charters and laws governing that subject. This inconvenience and damage is incident to the ownership of property. A proceeding in conformity to the charter and the laws of the land would not be wrongful, and would not sub-

ject the corporation to damages, though subsequently abandoned. The right to discontinue might not be granted by the court except upon equitable terms as the payment of costs and expenses. *Railroad v. Lackland, supra; City of St. Louis v. Meintz, supra.* We are not willing to strictly apply the rule declared in the *Leisse case, supra,* to a city having the charter rights of this defendant.

The charter of Kansas City, under which this proceeding was prosecuted, allowed an appeal by the city or by any defendant to be taken from the verdict of the jury to the circuit court. In the circuit court the case was given precedence over all other causes, and required a trial *de novo* in said court. One charge in the petition is that the proceedings were needlessly begun. As has been seen the city authorities are the judges of the necessity of the improvement, and not the courts. It appears from the petition that the proceedings were commenced under the provisions of the charter, no trespass upon the property is shown, and, therefore, that charge is not actionable.

The next charge is that the proceedings were unnecessarily delayed, and wrongfully and vexatiously continued, and kept pending over said property during said long period of time, and were entirely under the control of defendant, and could have been dismissed by it any time.

After the circuit court obtained jurisdiction of the case by appeal, neither party can be said to have had control of the proceedings, except that the city had the power to dismiss them upon such terms as the court might impose; otherwise the case is under control of the court. If plaintiffs had been a party to the appeal, the proceedings would have been as much under their control as that of the city, and we would presume that the seemingly unreasonable delay was unavoidable.

But no appeal was taken by plaintiffs from the verdict of the jury, and they had no standing in the court to enforce a trial or dismissal, except upon special leave of court.

From the beginning to the final dismissal of the proceedings was about nine years. Plaintiffs charge that the delay was wrongful, and it was manifestly injurious to them though they retained possession and a qualified use of the property in the meantime. We think that unless defendant can show that this long delay was unavoidable, and that reasonable diligence was used in the prosecution of the proceedings in the appellate court, then plaintiffs should receive compensation for their damages. We think the long, unexplained and wrongful delay charged, and the final dismissal of the proceedings, with the alleged injuries, make a *prima facie* case, and the demurrer should have been overruled.

The judgment reversed and cause remanded. All concur.