## WHITFORD *v.* ENGEL.

## ENGEL *v.* WHITFORD.

LANDLORD AND TENANT; LEASE; EMINENT DOMAIN; IMPROVEMENTS;
COVENANT; DAMAGES; SET-OFF.

1. A lessee for fifteen years, who failed, before the premises were taken by eminent domain, to comply with his covenant to make improvements as part consideration for the lease, cannot escape liability for the breach upon the theory that he had until the end of the term to comply, where the lease provided that if the premises should be condemned within five years the amount to be allowed the tenant for the improvements should be determined by arbitration.

2. A lessee who failed, before the premises were taken by eminent domain, to comply with his covenant to make improvements, cannot escape liability for the breach upon the theory that, the premises having been taken in condemnation proceedings in which the value of the lease was considered, the lessor's rights under the covenant must have constituted an element of the award, since, even if it could be supposed, as it cannot, that the award included such element, it would be no defense to the breach of covenant.

3. The liability of a lessee for breach of a covenant to make improvements is not affected by the extinguishment of the lease by the taking of the premises by eminent domain, where the lease provided for the termination of the lease and for allowances to the lessee for improvements if the premises should be so taken.

4. A proceeding to condemn property for public use is not in the nature of a contract between the owner and the condemning party, and until the property is actually taken and compensation is made or provided, the power of the condemning party over the matter is not exhausted (citing *District of Columbia* v. *Prospect Hill Cemetery,* 5 App. D. C. 497, and *Ross* v. *United States,* 8 App. D. C. 32); and it is accordingly the rule that, in the absence of any statutory provisions showing a legislative intent to the contrary, condemnation proceedings may be discontinued by the condemning party at any time before the rights of the property owner have become complete.

5. The United States in taking land by eminent domain does not, until payment of the award, "determine to take the property," within the meaning of a provision of a lease thereof that the lessee should be entitled to an allowance for improvements if the United States should determine to take the property within a certain time, especially where the proceeding is had under the act of Congress of August 30, 1890 (26 Stat. at L. 412, chap. 837, Comp. Stat. 1913, § 6914), providing that upon payment of the award the land shall be deemed to be condemned and taken.

6. The cost, amounting to $400, of an improvement claimed by a lessee to have been made by him under the terms of the lease, cannot be set off against his liability for breach of covenant, made in part consideration of the lease, to erect specified improvements costing $3,500, where neither the nature of the improvement sought to be set off, the circumstances under which the lessee was authorized to make it, nor an agreement on the lessor's part to pay for it, is shown, and it does not appear that the lease contemplated that the cost of the work done by the lessee, or of a partial construction of the required improvements, should be a credit upon the covenant.

Nos. 2679 and 2680. Submitted October 15, 1914. Decided November 2, 1914.

HEARING on cross appeals from a judgment of the Supreme Court of the District of Columbia in favor of plaintiffs for a less sum than demanded in an action to recover an amount alleged to be due for breach of covenant in a lease; plaintiffs appealing from the amount of the judgment, and defendant appealing from the judgment in favor of plaintiffs.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This action was brought in the supreme court of the District of Columbia for breach of a covenant contained in a lease between the testator of Florence O'Brien Whitford and Harriet Stearns Whitford, hereafter referred to as plaintiffs, and William A. Engel, hereafter referred to as defendant.

Plaintiffs filed their declaration, accompanied by an affidavit of merit, under common-law rule 73 of the District. After considerable delay and amendment, defendant answered in four

separate pleas, and filed an affidavit of defense.   Plaintiffs met
the pleas and affidavit with a motion for judgment for want of
a sufficient affidavit or defense.   The case, therefore, is in effect
as one arising on demurrer.   The facts are undisputed, con-
ceded by both parties, and call only for the conclusions of law
applicable thereto.

It appears that on July 22, 1902, a lease of the premises in
question was made by Daniel O'Brien, plaintiffs' testator, to de-
fendant; to run for a period of fifteen years.   The lease con-
tained a covenant whereby defendant agreed to erect upon the
lot in question improvements to cost not less than $3,500, and
to use the same for a ten-pin alley or billiard room, or other
legitimate games, and for no other purpose.   It was expressly
provided that the making of said improvements and the use of
the premises for the purpose named therein were part of the
consideration for the lease.   It was further provided in the lease
that, if the United States should determine to purchase the prem-
ises demised at any time during the existence of the lease, the
lease should cease and determine; that, if the government should
take the property within five years after the execution of the
lease, the amount to be allowed defendant on account of the
improvements erected on said lot should be determined by ar-
bitration, and that, if the United States should determine to
take the property on or after the expiration of five years and
within ten years from the date of the execution of the lease,
defendant should receive from the lessor one third of the cost
of improvements provided for in the said covenant, which sum
should be paid by the lessor to defendant within thirty days.

Defendant entered the premises, and occupied the same from
the date of the execution of the lease until March 1, 1913, and
did not erect the improvements covenanted for in the lease.   On
August 3, 1911, the United States instituted condemnation pro-
ceedings in the supreme court of the District of Columbia to ac-
quire the demised land and premises.   A condemnation com-
mission was appointed, which filed its report in court April 22,
1912.   The award of the condemnation commission was ap-
proved by the President of the United States, as required by law,

June 1, 1912, and was confirmed by the supreme court of the District June 7, 1912. From said award plaintiffs prosecuted an appeal to this court. *Whitford* v. *United States,* 40 App. D. C. 14. The judgment of the court below was affirmed, and thereafter, on March 1, 1913, an order having been entered in the court below on the mandate of this court, the proceedings were consummated by the United States paying to plaintiffs the amount fixed by the condemnation commission.

Plaintiffs' suit is to recover the full sum of $3,500 on account of the alleged breach of the covenant. Defendant's counsel contend, first, that defendant had until the expiration of the lease to comply with the covenant, and, since the lease was terminated before the expiration of the fifteen years, defendant was prevented from carrying out his agreement, and is therefore not liable to plaintiffs in any sum whatever; second, that, if liable for breach of the covenant, inasmuch as the report of the condemnation board was approved within ten years from the execution of the lease, the agreed cost of the improvements, $3,500, should be reduced by one third of that amount; and, third, that he is entitled to a further credit of $400 for certain improvements placed by him on the premises in the year 1911. The court rejected the first defense, and held defendant liable on the covenant; but sustained the second and third defenses, and gave judgment for plaintiffs for the sum of $1,933.33. From this judgment both parties have appealed.

*Mr. Frank J. Hogan* and *Mr. George L. Whitford* for Whitford.

*Mr. Joseph A. Burkart* for Engel.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

With the conclusion of the court below that there was a breach of the covenant by defendant, and that plaintiffs are entitled to recover therefor, we agree. The lease contemplated the erection of the building within a reasonable time, certainly within

five years, or else why the agreement as to the arbitration should the government determine to take the property within that period? The covenant was a part of the consideration for the lease, and plaintiffs were entitled to a timely compliance with its terms, so that they would either, at the termination of the lease, have an established business, or, in the event of the taking of the property by the government, have the advantage of the enhanced value due to the erection of the buildings and the establishment of the business therein.

It is urged by defendant that, inasmuch as the value of the lease was considered in the condemnation proceedings, the rights of plaintiffs under this covenant must have constituted an element in the award. There is nothing in the record to support this deduction, and it is doubtful if the contemplated erection of this building would be a proper element to consider in arriving at the market value of the property at the date of the taking by the government. Besides, the lease by its express terms expired with the event of the taking; hence, it had no prospective value. But a complete answer to defendant's contention is that any terms of settlement, however favorable to plaintiffs, which might have been made between plaintiffs and the government, cannot be invoked by defendant as a justification for his failure to comply with the terms of his agreement, or as a proper defense in this action.

The contention of defendant that the extinguishment of the lease by the act of condemnation relieved him from liability under the covenant is without merit. It is settled law, in line with the authorities cited by defendant, that, where a lease is extinguished by the taking of the demised premises under the right of eminent domain, further liability for the payment of rent ceases. But here the taking was anticipated by the parties, and the lease was conditioned upon the happening of that event. In that event, it contemplated two things,—adjustment for the improvements to be erected by defendant under the terms of the covenant in question, and the termination of the lease. Of course, no question could arise touching the liability of defendant for rent after the date of the taking by the government, for

the lease by its terms had expired; but this action is for an accrued indebtedness on that date, and not for a future liability.

A more difficult proposition is presented by the contention of defendant that the government determined to take the property within ten years from the execution of the lease, and, conceding his breach of the covenant, his liability, at most, could amount only to two thirds of the agreed cost of the building. By the act of Congress of June 25, 1910 (36 Stat. at L. 738, chap. 384), provision was made for the acquiring of land for the enlargement of the Capitol grounds. The property here in question was embraced in the land to be acquired. The act created a commission, which was "authorized and directed to acquire said premises by purchase, condemnation, or otherwise." If they could not acquire the property by purchase, they were authorized to institute condemnation proceedings according to the provisions of the act of Congress of August 30, 1890 (26 Stat. at L. 412, chap. 837, Comp. Stat. 1913, § 6914). The commissioners failed to acquire this property by purchase, and, accordingly, instituted condemnation proceedings, which did not reach a final judgment and determination in the supreme court of the District until March 1, 1913, when the order was entered upon the mandate of this court, and payment was made by the government to plaintiffs in full.

It is well settled that the government of the United States in condemnation proceedings to acquire lands for public use may abandon the proceedings at any time up to the date of actual payment. Indeed, the act of 1890 expressly provides, after authorizing the payments to be made either directly to the owner or by deposit in the Treasury to the credit of the owner, that "when such payments are so made, or the amounts belonging to persons to whom payment shall not be made are so deposited, the said lands shall be deemed to be condemned and taken by the United States for the public use." Thus, by the terms of the statute governing this case, the condemnation was not complete until payment was made on May 1, 1913.

But this is the established rule in this jurisdiction. As announced by Mr. Justice Robb in *District of Columbia* v. *Hess,*

35 App. D. C. 38, 28 L.R.A.(N.S.) 91: "A proceeding to con-
demn property for public use is not in the nature of a contract
between the owner and the condemning party, and until the
property is actually taken and compensation is made or pro-
vided, the power of the condemning party over the matter is not
exhausted. *Garrison* **v.** *New York,* 21 Wall. 196, 22 L. ed.
612; *District of Columbia* v. *Prospect Hill Cemetery,* 5 App.
D. C. 497; *Ross* v. *United States,* 8 App. D. C. 32. Accord-
ingly it is a rule of almost universal application that, in the
absence of any statutory provision showing a legislative intent
to the contrary, condemnation proceedings may be discontinued
by the condemning party at anytime before the right of the
property owner has become complete. *Manion* v. *Louisville,
St. L. & T. R. Co.* 90 Ky. 491, 14 S. W. 532; *Simpson* v. *Kan-
sas City,* 111 Mo. 237, 20 S. W. 38; *O'Neill* v. *Hudson County,*
41 N. J. L. 161; Nichols, Em. Dom. §§ 337, 338."

In *United States* v. *Oregon R. & Nav. Co.* 9 Sawy. 61, 16
Fed. 524, it was held that, in the absence of a statute fixing the
time within which a discontinuance may be had, the govern-
ment, in the exercise of the right of eminent domain, could
discontinue condemnation proceedings at any time before pay-
ment of compensation. The conclusion is, therefore, irresist-
ible that in this case the government did not finally determine
to take the property until March 1, 1913, more than ten years
after the expiration of the lease.

The third defense is based upon the following allegation in
the plea and affidavit of defense: "This affiant further says
that in the spring and early summer of 1911 he did, in accord-
ance with the terms and provisions of said lease, erect on said
lot improvements costing the sum of $400, for which sum this
affiant claims credit and allowance, * * * should the
plaintiff herein be found entitled to recover anything from
this affiant." This is a mere conclusion of law, not supported
by any allegations of fact which would enable the court to ad-
judge it a valid set-off against plaintiffs' claim. It is not
averred that plaintiffs' testator agreed to pay for this improve-
ment, or in what this improvement consisted, or the circum-

stances under which defendant was authorized to make it. For aught that appears in this record, it may well have been, as the covenant in question, part of the consideration for the lease. In that event, defendant, in making the improvement, only did what he had agreed to do. Indeed, the meager averment seems to support this inference, since no claim is made against plaintiffs unless it be found that defendant is indebted to them. If the claim is a valid one, it is not apparent why defendant should not assert it regardless of whether he is indebted to plaintiffs or not. Certain it is that there is nothing to indicate that this particular improvement was related to, or formed a part of, the work to be performed under the covenant. The contract is not before us, but the facts relating to the construction of the building embraced in the covenant are stated with particularity in the pleadings and conceded by both parties to be correct, but nowhere does it appear that the cost of the work performed by defendant should constitute a credit thereon. The minimum cost of the building was to be $3,500, and nowhere does it appear that this amount could be reduced by a partial construction at a cost of $400, or that it should be set off by work performed by defendant under a separate covenant in the lease.

The judgment is reversed, with costs against the defendant Engel, and the cause is remanded, with instruction to the court below to enter a judgment for plaintiffs in the sum of $3,500, with interest from March 1, 1913. *Reversed.*