13601

EX PARTE SAVANNAH RIVER ELECTRIC CO.
IN RE: CONDEMNATION OF LANDS OF TWIN CITY POWER
CO. *ET AL.*

(168 S. E., 554)

March, 1929.

*Messrs. T. B. Greneker, D. W. Robinson* and *D. W. Robinson, Jr.,* for appellants,

*Messrs. Grier, Park, McDonald & Todd, Hull, Barrett & Willingham* and *J. W. Thurmond,* for respondent,

March 14, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Savannah River Electric Company and Twin City Power Company are South Carolina corporations, each having for the object of its creation the development of water power on Savannah River, in McCormick County, for the purpose of generating electrical current for general ·public use. Daniel J. Halpin is trustee, holding certain bonds issued by Twin City Power Company. For the sake of brevity let us designate the respondent as the electric company and the appellant corporation as the power company.

March 30, 1929, the electric company began proceedings to condemn certain lands of the power company. April 26, 1929, the power company and Daniel J. Halpin, as trustee, served on the electric company notice of their refusal to consent to the taking of their lands. About the same date the power company began an action in the Court of Common Pleas for McCormick County against the electric company for the purpose of enjoining them from proceeding with the condemnation proceedings. The matter came before Judge W. H. Townsend, in Circuit Court, on return to the rule to show cause. He ordered that an injunction be

granted provided Daniel J. Halpin, as trustee, be made a party to the proceedings within thirty days, and that in case he was not made such party the action be dismissed.

Both parties appealed from this order. The injunction was dismissed by the opinion of this Court. 163 S. C., 438, 161 S. E., 750. A petition by plaintiff, the power company, for a writ of certiorari was denied by the Supreme Court of the United States. 284 U. S., 574, 52 S. Ct., 17, 76 L. Ed., 499.

March 8, 1932, the electric company gave notice to the power company and Halpin, as trustee, that they had abandoned the condemnation proceedings. July 31, 1932, the power company gave notice of a motion that it be referred to a master or referee to ascertain the expenses and fees to be taxed against the electric company by the power company and Daniel J. Halpin, as trustee, under the provisions of Section 7298, Code 1932. The motion was heard by Judge S. W. G. Shipp, who held in an order dated November 5, 1932, that the motion for the reference be refused. This appeal is from that order.

The exceptions present the single question whether the power company and Daniel J. Halpin, trustee, were entitled to expenses and fees which it is alleged they had incurred because of the institution of the condemnation proceedings; and whether it was error to refuse the motion to order a reference to ascertain the amount of such expenses and fees.

The pertinent provisions of Section 7298 of the Code 1932, under which appellants claim, are as follows: "Every municipality, or other corporation, upon which the power of eminent domain has been or may hereafter be conferred, shall be required, whenever it institutes condemnation proceedings against any property, to either take the property and pay therefor the amount of the award in such proceedings as finally established, or to pay to the owner or owners of the property sought to be condemned all expenses incurred

by them in connection with such proceedings, including a reasonable attorney's fee, which expenses and fees shall be ascertained by a reference of the question of the amount of such expenses .and fee to the master  *  *  *  and to a referee appointed by the Court  *  *  *  on motion in the proceedings at any time after the expiration of thirty (30) days after the award has been finally rendered and remains unpaid."

Judge Shipp, in the order appealed from, said: "Prior to the passage of the Act which now appears as Section 7298, the common-law rule was of force, to the effect that condemnation proceedings may be abandoned at any time before the landowner's right to compensation is vested, and under such circumstances the landowner was not, as a general rule, entitled to recover any damages, 20 C. J., 1086 (*Haig v. Wateree Power Company*, 119 S. C., 319, 330, 112 S. E., 55). The right .to have expenses and fees taxed, therefore, depends upon the construction of the Act of 1924, now Section 7298. My construction of this section is that the right to have expenses and fees taxed does not arise until there has been an award. When an award has been made the party who instituted the condemnation proceedings has either to take property and pay the award, or must pay to the owner, all expenses and fees incurred by him. That the award must precede the right to an order of reference appears from this language in the section under consideration: 'Which reference shall be ordered on motion in the proceedings at any time after the expiration of thirty days after the award has been finally rendered and remains unpaid.' "

Appellants earnestly contest this ruling, on the ground that the statute should be liberally construed because it is remedial in character, and because eminent domain laws should be strictly construed against the condemnor and in favor of the landowner, and because, in construing statutes, courts do so in the light of the general purposes of the statute and the legislative intent.

With equal earnestness respondent contends that this statute being in derogation of the common law must be strictly construed.

We may concede to be sound, as a general rule, the proposition contained in each of these postulates. The cardinal question is: Which of them applies?

If the Act is remedial in its nature, the defect which it is proposed to remedy is the failure of the common law to provide for the payment of expenses and fees of the landowner in case the condemnor fails to pay the amount of the award. That being so, it must be construed in the light of the rule of law that acts in derogation of the common law must be strictly construed. This acknowledged rule is thus expressed in 25 R. C. L., 1056: "When a statute which is evidently intended to make an innovation upon the common law is susceptible of more than one construction it is not to be construed as altering the common law further than the language of the statute clearly and necessarily requires. The general rule as usually expressed is that statutes in derogation of the common law are to be strictly construed."

There is no contest of the proposition that eminent domain statutes are strictly construed against the condemnor. Nor is there any contest of the proposition that courts, in construing statutes, seek to ascertain and apply the legislative intent. But there is another rule of universal application to the effect that in construing statutes the words used are to be given their ordinary and usual meaning.

"A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice will never pass by implication and where the power is granted the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained." 10 R. C. L., 196, § 168.

Mr. Chief Justice McIver, delivering the opinion of this Court in *Beaty v. Richardson,* 56 S. C., 173, 180, 34 S. E., 73, 76, 46 L. R. A., 517, quoted with approval the following rules: "In Potter, Dwar. St., the rule is thus laid down: 'That where the language is explicit the courts are bound to seek for the intention in the words of the Act itself, and they are not at liberty to suppose, or to hold that the legislature intended anything different from what their language imports.' So in the comparatively recent work of Endlich on the Interpretation of Statutes (Section 4), it is said: 'The legislature must have intended to mean what it has plainly expressed, and consequently there is no room for construction. * * * Where the words of a statute are plainly expressive of an intent, not rendered dubious by the context, the interpretation must conform to and carry out that intent. It matters not, in such a case, what the consequences may be. It has therefore been distinctly stated (quoting from Wilberforce on Statute Law), from early times down to the present day, that judges are not to mould the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardship, or of what in their view is right and reasonable or is prejudicial to society; are not to alter clear words, though the legislature may not have contemplated the consequences of using them; are not to tamper with words for the purpose of giving them a construction which is supposed to be more consonant with justice than their ordinary meaning.' "

"All proceedings in statutory actions are limited by the specific power granted by the statute, the words of which must be construed in their legal and commonly accepted meaning." *Haig v. Wateree Power Co.,* 119 S. C., 319, 112 S. E., 55.

Why present other authorities? Nowhere has the law applicable to the question herein to be decided been more clearly and concisely stated.

The electric company had a right to abandon its condemnation proceedings. 20 C. J., 1086, note a.

Indeed, the power company resorted to legal proceedings to halt them. It sought to prevent, and doubtless its action had some weight in preventing, the proceedings from proceeding to the point of an award.

But that is by the way.

The electric company had the right under the common law to abandon its condemnation proceedings.

The Act of 1924 (Section 7298) does not alter or take away that right, nor does it attempt to penalize the condemnor for exercising it. Its patent purpose is to recompense the landowner for the expenses he has incurred when the condemnor, in the exercise of his option, refuses to accept the property at the price fixed by the award. In the nature of the case this right to recover expenses and fees does not accrue to the landowner until the condemnor has exercised his option; the option cannot be exercised until the award.

The language of Section 7298 so clearly expresses this intent it is difficult to see how any doubt thereabout can be entertained. The pertinent provisions of that section are hereinabove quoted.

We think Judge Shipp has correctly interpreted the Act. The exceptions are overruled, and the order appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.